## In re Spear Street Associates

[494 A.2d 138]

No. 82-544

Present: Allen, C.J., Hill, Underwood and Gibson, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed April 12, 1985

*Lisman & Lisman,* Burlington, for Applicant-Appellant.

*John J. Easton, Jr.*, Attorney General, and *William H. Rice* and *Stephanie J. Kaplan,* Assistant Attorneys General, Montpelier, for Appellee.

Hill, J. The appellant, Spear Street Associates (developer), appeals an order of the Vermont Environmental Board (Board) regarding its application for a proposed housing development and subdivision in South Burlington. The proposal involved the construction of 79 condominium housing units and the subdivision of 55 single-family lots, along with related site improvements, on 51 acres of land on the west side of Spear Street in South Burlington. The developer, as owner of an option to purchase the land in question, applied to the District Environmental Commission No. 4 (Commission) for a land use permit pursuant to Act 250 (10 V.S.A. ch. 151), to develop the site in accordance with its proposal. The Commission granted the permit. Adjoining landowners appealed the Commission's decision to the Board, alleging, inter alia, that the proposed development was not in compliance with the provisions of Act 250 relating to development on "primary agricultural soils." 10 V.S.A. § 6086(a)(9)(B). Following a de novo hearing, the Board issued an order permitting the construction of the 79 condominium housing units, but refusing to approve the subdivision of the site for the 55 single-family lots. In refusing to approve the latter part of the proposed development, the Board concluded that a significant portion of the site contained "primary agricultural soils" as defined by 10 V.S.A. § 6001(15). It further concluded that the developer failed to satisfy its burden of proof, 10 V.S.A. § 6088(a), as it failed to demonstrate that the criteria relating to developments on primary agricultural soils were satisfied. The developer appeals the Board's order, and alleges that certain findings of the Board are clearly erroneous, and that certain conclusions of the Board are contrary to law. We affirm.

I.

The developer's first claim on appeal is that the Board erred in concluding that the 51-acre site contains 40 acres of primary agricultural soils. Primary agricultural soils are defined in 10 V.S.A. § 6001(15) as:

> soils which have a potential for growing food and forage crops, are sufficiently well drained to allow sowing and

harvesting with mechanized equipment, are well supplied with plant nutrients or highly responsive to the use of fertilizer, and have few limitations for cultivation or limitations which may be easily overcome. In order to qualify as primary agricultural soils, the average slope of the land containing such soils does not exceed 15 percent, and such land is of a size capable of supporting or contributing to an economic agricultural operation. If a tract of land includes other than primary agricultural soils, only the primary agricultural soils shall be affected by criteria relating specifically to such soils.

Evidence was presented at the hearing before the Board that 40 acres of the site contained soil with the physical characteristics set forth in this definition. Evidence was also presented that this portion of the site was of a size capable of contributing to an economic agricultural operation. The determination of whether a site contains primary agricultural soils or not is essentially a factual one. It is the Board's responsibility to hear the evidence on this issue, and based on that evidence, make factual findings and conclusions concerning the presence of primary agricultural soils on the site. "Findings of fact of an administrative agency will not be set aside unless clearly erroneous, and, where warranted by the evidence, are conclusively binding on this Court." *Munro-Dorsey* v. *Department of Social Welfare,* 144 Vt. 614, 616, 481 A.2d 1055, 1057 (1984) (citations omitted). In the instant case, credible evidence having been presented to support the Board's finding that 40 acres of the site contain primary agricultural soils, that finding is not clearly erroneous and must be upheld.

The developer also argues that the Board erred in concluding that the site was of a size capable of contributing to an economic agricultural operation because it claims that any contribution must be to an on-site agricultural operation. The plain meaning of the statute, e.g., *Wetterau, Inc.* v. *Department of Taxes,* 141 Vt. 324, 327, 449 A.2d 896, 897 (1982), together with the deference we afford the Board in its construction of the statute, e.g., *In re Vermont Health Service Corp.,* 144 Vt. 617, 622–23, 482 A.2d 294, 297 (1984), lead us to conclude that contribution to an economic agricultural operation does not require contribution only to an on-site agricultural operation.

## II.

The developer's second claim on appeal is that the Board erred in concluding that the proposed development would significantly reduce the agricultural potential of the primary agricultural soils. Title 10 V.S.A. § 6086(a)(9)(B) provides:

A permit will be granted for the development or subdivision of primary agricultural soils only when it is demonstrated by the applicant that, in addition to all other applicable criteria, either, the subdivision or development will not significantly reduce the agricultural potential of the primary agricultural soils; or,

(i) the applicant can realize a reasonable return on the fair market value of his land only by devoting the primary agricultural soils to uses which will significantly reduce their agricultural potential; and

(ii) there are no nonagricultural or secondary agricultural soils owned or controlled by the applicant which are reasonably suited to the purpose; and

(iii) the subdivision or development has been planned to minimize the reduction of agricultural potential by providing for reasonable population densities, reasonable rates of growth, and the use of cluster planning and new community planning designed to economize on the cost of roads, utilities and land usage; and

(iv) the development or subdivision will not significantly interfere with or jeopardize the continuation of agriculture or forestry on adjoining lands or reduce their agricultural or forestry potential.

These provisons require that the Board first determine whether the development will significantly reduce the agricultural potential of the primary agricultural soils. If it determines that no significant reduction of agricultural potential will occur, the Board concludes its inquiry on the issue of primary agricultural soils. If, however, the Board determines that a significant reduction will occur, then the Board must proceed to determine whether the four subcriteria have been satisfied. The developer, as the applicant for the permit, bears the burden of proof regarding these determinations. 10 V.S.A. § 6088(a). This sequential analysis was first adopted by the Board in *In re Davi-*

*son,* No. 5L0444-EB (Vt. Environmental Bd., July 21, 1978). It has been used consistently by the Board since then. There being no compelling indication that this interpretation is in error, we defer to the Board's construction of Act 250 regarding the procedure required in determining when such a permit will issue. See, e.g., *In re Vermont Health Service Corp., supra,* 144 Vt. at 622–23, 482 A.2d at 297.

The developer alleges that the subdivision of the site will not significantly reduce the agricultural potential of the soils because individual vegetable gardens could be cultivated on the lots. The evidence presented to the Board, however, reveals that the soils at the site are best suited for producing forage crops for a dairy farm, and that the very act of dividing the ownership of the parcel would significantly reduce the agricultural potential of the primary agricultural soils. Evidence having been presented supporting the Board's determination, it was not improper for the Board to conclude that the subdivision of the site would significantly reduce the agricultural potential of the primary agricultural soils.

### III.

The developer's final argument is that it presented evidence to the Board demonstrating that each of the four subcriteria of 10 V.S.A. § 6086(a)(9)(B) were satisfied and that this evidence was sufficient to satisfy its burden of proof, and that the Board thus erred in concluding that all these criteria were not satisfied.

Following a determination that the proposed development will significantly reduce the agricultural potential of the primary agricultural soils, the developer will be granted a permit for his development only if, by the evidence he presents, he persuades the Board that each of the four subcriteria found in 10 V.S.A. § 6086(a)(9)(B) has been satisfied. In the instant case, the Board determined that the developer did not satisfy its burden of proof because it failed to demonstrate that subcriteria (i), (iii) and (iv) were satisfied. We affirm the Board's decision based on its correct determination that the developer failed to satisfy its burden as to the third subcriterion. Since the developer's failure to satisfy its burden as to any one of the four criteria is sufficient to merit an affirmance of the Board's

decision, we do not decide whether the Board's determinations regarding subcriteria (i) and (iv) were correct.

■■■ 10 V.S.A. § 6086(a) (9) (B) (iii) requires the developer to show that:

> the subdivision or development has been planned to minimize the reduction of agricultural potential by providing for reasonable population densities, reasonable rates of growth, and the use of cluster planning and new community planning designed to economize on the cost of roads, utilities and land usage.

The Board had previously construed this subsection as requiring "careful consideration of design alternatives that could reduce a project's impact on primary agricultural soils, and [requiring] adoption of a land-conserving design when it is reasonable to do so." *In re C & K Brattleboro Associates,* No. 2W0434-EB (Vt. Environmental Bd., Jan. 2, 1980). "[A]bsent compelling indication of error, interpretations of statutory provisions by the administrative body responsible for their execution will be sustained on appeal." *In re Vermont Health Service Corp., supra,* 144 Vt. at 622–23, 482 A.2d at 297. There being no indication that the Board's interpretation is in error, it is sustained. It is thus incumbent upon the developer to demonstrate to the Board that its proposed development is designed to reduce the impact on primary agricultural soils. In the instant case, the Board believed that an alternative, less-destructive design might be reasonable. In fact, the neighbors appealing to the Board presented an alternative plan. The developer, however, failed to present evidence that the proposed development would minimize the impact on primary agricultural soils relative to other reasonable design alternatives. The developer thus failed to satisfy his burden of proof, and the Board's determination must stand.

*Affirmed.*